## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| TAMATHA M. BECHTOLD, as Trustee for the Heirs and Next of Kin of Richard A. Hiltner, decedent,<br><br>                                    Plaintiff,<br><br>v.<br><br>STEARNS COUNTY, MINNESOTA; STEARNS COUNTY SHERIFF'S DEPARTMENT CORRECTIONAL DIVISION OFFICERS JOHN DOE, In Their Official and Individual Capacities; JOHN M. EGGERS, Psychologist, In His Official and Individual Capacities; and CENTRAL MINNESOTA MENTAL HEALTH CENTER,<br><br>                                    Defendants. | Civil No. 05-2701 (JRT/RLE)<br><br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS STEARNS COUNTY AND STEARNS COUNTY CORRECTIONAL DIVISION OFFICERS' MOTION FOR SUMMARY JUDGMENT** |

Robert M. Gardner, **GARDNER LAW OFFICE**, 12226 Nicollet Avenue South, Burnsville, MN  55337, for plaintiff.

Jason M. Hill and Roger L. Rowlette, **JOHNSON & LINDBERG, P.A.**, 7900 International Drive, Suite 960, Minneapolis, MN 55425-1582, for Stearns County defendants.

Peter G. Van Bergen, **COUSINEAU McGUIRE CHARTERED**, 1550 Utica Avenue South, Suite 600, Minneapolis, MN  55416-5318, for defendants Eggers and Central Minnesota Mental Health Center.


Plaintiff Tamatha M. Bechtold ("Bechtold") is trustee for the heirs of Richard A.

Hiltner ("Hiltner").  Hiltner committed suicide on November 27, 2003, while serving a

term of imprisonment in the Stearns County Jail.  Bechtold initiated this action against

defendants alleging violations of Hiltner's Eighth Amendment right to adequate medical treatment and common law negligence.  Defendants Stearns County and Stearns County Correctional Division Officers John Doe (collectively "Stearns County defendants") filed a motion for summary judgment.  For the reasons discussed below, the Court denies Stearns County defendants' motion in its entirety.

## BACKGROUND

Prior to his suicide on November 27, 2003, Hiltner had a significant history of substance abuse, mental illness, and attempted suicide.  Hiltner had indicated his suicidal tendencies as early as November 2001, when he was admitted to the Stearns County Jail on pending charges of second-degree assault and making terrorist threats.  In March 2002, Hiltner was admitted to the Willmar Regional Treatment Center ("WRTC") following an attempted suicide by hanging. He was diagnosed with bi-polar disorder while at the WRTC and was subsequently discharged.

Hiltner was later convicted and sentenced on the pending assault and terrorist threat charges.  He reported to the Stearns County Jail on July 31, 2002 to serve his term of imprisonment, and indicated on a Stearns County screening form that he suffered from bi-polar disorder and that he had attempted suicide in March 2002.  Hiltner served the duration of his term without incident, and was released twenty days later.  Hiltner was arrested in August 2003, and then again in October 2003, for violating conditions of his supervised release.  Following each arrest, Hiltner completed the Stearns County screening form, noting his mental illness and his history of attempted suicide.  On a

Stearns County screening form dated October 19, 2003, Hiltner stated that he suffered from bi-polar disorder, that he was on a variety of anti-depressant medications, and that he had tried to commit suicide within the past year.  Hiltner also stated on that form that he did not feel suicidal at the time of his admission to the jail.

On October 22, 2003, Hiltner was placed in lockdown following an altercation with a fellow inmate.  Four days later, Hiltner told a correctional officer that he would harm himself if he were not released from lockdown.  Hiltner asked to be transferred to an outside psychiatric treatment facility, and told another officer that he was thinking of banging his head into the door because he was tired of the lockdown.  As a result of his behavior, Hiltner was referred to defendant John Eggers, a licensed psychologist, for a suicide evaluation on October 28, 2003, in accordance with the Stearns County Suicide Prevention Plan.

Dr. Eggers' psychiatric assessment determined that Hiltner was fully oriented, that his mood was "sullen and angry," and that he was generally "frustrated with life." (Defs.' Mem. Ex. J.)  Dr. Eggers further noted that Hiltner used "threats of self-harm if things don't go his way," that he appeared manipulative and threatening, and that he was at a high risk of acting on impulses.  (Defs.' Mem. Ex. J.)  Based on his assessment, Dr. Eggers placed Hiltner at a suicide risk level of 4 on a scale of 1 to 5, level 5 representing an "imminent/very high" risk of suicide.  Dr. Eggers recommended that Hiltner be placed on close observation and monitored for suicidal comments once out of lockdown.  Dr. Eggers further stated that a psychiatric consultation should be considered

- 3 -

if his condition did not improve, noting that Hiltner had indicated his medications were not working as well as previously.

On November 19, 2003, Hiltner submitted an inmate Request Form in which he requested transfer to the WRTC.  On November 20, Hiltner submitted another Request Form that stated "I want to die can I get moved to G please."  (Pl.'s Mem. Ex. 12.) Several days later, Hiltner refused to take his medication, and apparently told another inmate that "life was not worth living" and that he sometimes wanted to "end it all." (Defs.' Mem. Ex. N.)  Hiltner was placed on a 24-hour lockdown on November 24, 2003. A search of Hiltner's cell revealed a sharpened spoon, ripped strips of a bath towel, and one-half of a medication tablet.

Following these events, Dr. Eggers conducted a second psychiatric evaluation of Hiltner on November 25, 2003.  Dr. Eggers noted that "passive, if not active, suicidal ideation is voiced," but that Hiltner was "likely very manipulative."  (Defs.' Mem. Ex. R.)   Hiltner made several comments alluding to his potential suicide during the evaluation, including a statement that he would leave the jail in a bodybag.  Hiltner also showed Dr. Eggers a self-inflicted superficial cut on his left forearm, which Hiltner had made with the sharpened spoon that had been seized from his cell.

Based on his assessment, Dr. Eggers recommended that Hiltner's cell be closely monitored and checked by prison officials every 10 minutes.  Dr. Eggers did not elevate Hiltner's suicide risk level from level 4 to level 5, however.  Dr. Eggers specifically recommended that prison officials remain "aware of Mr. Hiltner's potential for both manipulations and potential harm to himself."  (Defs.' Mem. Ex. R.)  He also noted

Hiltner's request for a review of his current medication.  Dr. Eggers later testified in his deposition that Hiltner's comments and actions appeared to indicate a desire to compel action by prison officials, rather than a genuine suicidal tendency.  For example, Dr. Eggers testified that a self-inflicted superficial cut, such as the one on Hiltner's forearm, is often a manipulative gesture rather than a genuine threat of suicide.

On November 25, 2003, Hiltner was transferred to an isolation cell close to the Stearns County Jail booking desk so that officers could conduct 10-minute well-being checks on Hiltner.  The isolation cell contained two blankets.  Hiltner was closely monitored without incident over the course of the next two days.  On November 27, 2003, Hiltner asked to be let out of his cell.  When his request was denied, Hiltner became agitated.  The officer on duty at the time, David Green, went to Hiltner's cell and observed Hiltner kicking and banging his head against the cell door.  Hiltner gradually calmed down, and Green returned to the desk.  After Green returned to his desk, he heard Hiltner say, "I'll show you how it's done."  (Pl.'s Mem. Ex. U, at 29.)  When Green returned to the cell, Hiltner was hanging from a noose that he had fashioned out of strips torn from the blankets in his cell.  Officials administered oxygen to Hiltner, and then took him to the hospital, where he was pronounced dead.

Stearns County has a Suicide Prevention Plan that includes specific provisions for staff training, identification of at-risk individuals, appropriate staff intervention procedures, and various reporting procedures.  The Plan requires that all jail staff receive annual training.  The shift supervisor is instructed to implement various intervention procedures to minimize the suicide risk of inmates, including making each cell "as

suicide proof as possible" and seeking immediate medical attention for inmates in need of care.   (Defs.' Mem. Ex. Y.)   Staff conducting 10-minute reviews are required to document their observations.   In addition, the Plan allows prison staff to refer at-risk inmates to a mental health professional.   The mental health professional will see the inmate within one day of the referral, provide a written synopsis of the inmate's suicide risk, make recommendations for continued intervention to the shift supervisor, and make further referrals as necessary, including referrals to psychiatrists.

Bechtold brought this civil rights action under 42 U.S.C. § 1983 as trustee on behalf of Hiltner's heirs.   Bechtold alleges that Stearns County defendants failed to prevent Hiltner's suicide in violation of his right to adequate medical treatment under the Eighth Amendment of the United States Constitution.   Bechtold further argues that Stearns County defendants' actions constitute negligence under Minnesota state law. Defendants Stearns County and Stearns County Correctional Division Officers John Doe filed this motion for summary judgment.[1]

## I.   STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit,

---

[1] Stearns County defendants John M. Eggers and the Central Minnesota Mental Health Center ("CMMHC") filed a memorandum in opposition to Stearns County defendants' motion for summary judgment.  Eggers and CMMHC argue generally that genuine issues of material fact preclude the Court from granting Stearns County defendants' motion, but they do not present specific arguments opposing the motion.

and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   BECHTOLD'S EIGHTH AMENDMENT CLAIM

Bechtold argues that Stearns County and Stearns County Jail Administer Paul G. Lahr ("Lahr")[2] violated Hiltner's Eighth Amendment right to adequate medical treatment by failing to prevent Hiltner's suicide. Lahr contends that he is entitled to qualified immunity with respect to Bechtold's Eighth Amendment claim. Stearns County argues that it is protected from the alleged constitutional violations under *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). The Court addresses each argument in turn.

### A.   Qualified Immunity

To determine whether Lahr is entitled to qualified immunity, the Court engages in a two-part analysis. The Court first considers whether the facts alleged, taken in a light most favorable to the plaintiff, show that Lahr's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Flowers v. City of Minneapolis*, 478 F.3d 869,

---

[2] During oral argument on Stearns County defendants' motion for summary judgment, Bechtold's counsel identified the Stearns County Correctional Division Officer John Doe as Jail Administrator Paul Lahr.

872 (8th Cir. 2007).   If so, then the Court must decide whether that constitutional right was clearly established at the time of the violation.   *Flowers*, 478 F.3d at 872.   To determine whether a right is clearly established, the Court examines "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.   Lahr is entitled to qualified immunity if, viewing the facts in a light most favorable to Bechtold, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged actions violated Hiltner's constitutional right.   *Foulks v. Cole County*, 991 F.2d 454, 456 (8th Cir. 1993).

Bechtold asserts that Lahr violated Hiltner's constitutional rights by failing to prevent his suicide.   Courts treat such claims as a "failure to provide adequate medical treatment" under the Eighth Amendment.   *Hott v. Hennepin County*, 260 F.3d 901, 905 (8th Cir. 2001).   The appropriate standard for determining whether Hiltner's Eighth Amendment right has been violated is whether Lahr acted with "deliberate indifference" to Hiltner's medical needs.   *Drake v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006).   To establish deliberate indifference, Bechtold must show that Lahr "actually knew that the inmate faced a substantial risk of serious harm and failed to respond reasonably to abate that risk."   *Id.*   This knowledge is "subject to proof by all the usual ways, including inferences based on the obviousness of the risk."   *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000).   "[D]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct."   *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003).

Bechtold first argues that Lahr failed to implement the Stearns County Suicide Prevention Plan in a way that ensured Hiltner would have ready access to a psychiatrist, and that this failure to implement was deliberately indifferent to Hiltner's medical needs. Bechtold points to a provision of the plan that provides, "The mental health professional will continue to see the inmate as they deem necessary, or will make further referrals as necessary (e.g., psychiatrist)." (Defs.' Mem. Ex. Y.)   According to Bechtold, the psychiatric care provision is illusory because the Stearns County Jail has no in-house psychiatrist and has not contracted with any psychiatric care providers.  Bechtold further notes that there is generally a two to six month waiting period for inmates to see a psychiatrist.

Even viewing the facts in a light most favorable to Bechtold, the Court finds that Lahr's alleged failure to implement the psychiatric referral provision does not amount to deliberate indifference to Hiltner's medical needs.  Specifically, Bechtold has established no material facts suggesting that the absence of a psychiatric referral constituted a failure on the part of Lahr to respond reasonably to abate Hiltner's risk of suicide.  Lahr's response to Hiltner's risk of suicide was based on the recommendations of Dr. Eggers, who has the responsibility under the Suicide Prevention Plan to make any necessary inmate referrals.   While Dr. Eggers noted Hiltner's request for a review of his medications, he did not specifically recommend that Hiltner be referred to a psychiatrist. Because Lahr relied on the medical opinion of a trained professional, the Court finds that his failure to refer Hiltner to a psychiatrist is not deliberately indifferent.  *See Drake*, 445 F.3d at 1042 (holding that reliance on the opinion of a trained professional does not

constitute deliberate indifference).  Nor has Bechtold identified any facts showing that Dr. Eggers chose not to make a psychiatric referral because Stearns County's psychiatric care is, in fact, illusory.  Rather, the undisputed facts show that Dr. Eggers decided not to elevate Hiltner's suicide risk level after a second medical assessment, finding that Hiltner's threats of self-harm were consistent with manipulative gestures designed to prompt action by prison officials.  In short, the Court finds that Lahr's alleged failure to implement the psychiatric referral did not violate Hiltner's constitutional right to adequate medical treatment.

Bechtold next asserts that Lahr's failure to ensure annual training under the Suicide Prevention Plan was deliberately indifferent to Hiltner's medical needs.  Bechtold points to the Plan provision requiring procedures to make a suicidal inmate's cell "as suicide proof as possible."  (Defs.' Mem. Ex. Y.)  According to Bechtold, Lahr's failure to ensure annual training created uncertainty among prison officials as to the meaning of "as suicide proof as possible."  Bechtold alleges that this uncertainty may have led prison officials to allow, or to fail to remove, the two blankets from Hiltner's cell, which ultimately enabled Hiltner's suicide.

Allowing the plaintiff the benefit of all reasonable inferences that can be drawn from the facts, the Court finds that Bechtold has adduced sufficient evidence to show that Lahr's failure to ensure annual training for all Stearns County correctional staff was deliberately indifferent to Hiltner's medical needs.  Specifically, Lahr knew that Dr. Eggers had placed Hiltner on a 10-minute suicide watch, and the record suggests Lahr was aware that Hiltner faced a substantial risk of serious harm.  Lahr was further aware

that a former Stearns County inmate had committed suicide in June 2003, shortly after being transferred from Stearns County to Benton County. Given Lahr's awareness of Hiltner's suicide risk and of the prior suicide, a jury could conclude that Lahr failed to respond reasonably to abate Hiltner's risk of suicide because he did not ensure that staff received annual suicide prevention training. A jury could further find that the lack of suicide prevention training resulted in prison officials allowing two blankets in Hiltner's cell. For purposes of qualified immunity, then, the Court concludes that the facts alleged by Bechtold show that Lahr violated Hiltner's Eighth Amendment right.

The Court next considers whether Hiltner's constitutional right was clearly established at the time of the violation. *See Saucier*, 533 U.S. at 502. "It is not enough that the right be established in an abstract sense." *Kahle v. Leonard*, 477 F.3d 544, 552-53 (8th Cir. 2007). For example, Bechtold cannot defeat Lahr's claim to qualified immunity merely by showing that detainees have a clearly established right to be free from cruel and usual punishment under the Eighth Amendment. *See id.* at 553 ("At a high enough level of abstraction, every constitutional right is clearly established."). Rather, Bechtold must show that a reasonable prison official in Lahr's position would have known that failing to ensure annual suicide prevention training was deliberately indifferent to a substantial risk that Hiltner would commit suicide. *See id.*

The Court finds that Bechtold has made such a showing. It is clearly established in the Eighth Circuit that a prison official may be liable under the Eighth Amendment where the official "knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Coleman v.*

*Rahija*, 114 F.3d 778, 785 (8th Cir. 1997); *Kahle*, 477 F.3d at 553.   More specifically, the Eighth Circuit has imposed liability on prison officials whose inadequate training procedures or failure to supervise resulted in the suicide of an inmate.   *Compare Wever v. Lincoln County*, 388 F.3d 601, 606-07 (8th Cir. 2004) (denying qualified immunity to sheriff because previous jail suicides created genuine issue of material fact as to sheriff's deliberate indifference), *with Vaughn v. Greene County*, 438 F.3d 845, 851-52 (8th Cir. 2006) (granting summary judgment to sheriff because plaintiff had established no evidence demonstrating that the sheriff knew his policies, training procedures, or supervision were inadequate).   Under Eighth Circuit precedent, then, a reasonable officer in Lahr's position would have known that his failure to ensure suicide prevention training could be deemed deliberate indifference to Hiltner's medical needs, provided Lahr had notice that the suicide prevention training was inadequate.   In short, Hiltner's constitutional right was clearly established at the time of the violation.

Whether Lahr was, in fact, aware that his failure to ensure annual training was deliberately indifferent to Hiltner's medical needs is a genuine issue of material fact for the jury.   For example, Bechtold alleges that another Stearns County inmate committed suicide in June 2003 shortly after he was transferred to the Benton County Jail.   Bechtold also contends that Stearns County officials failed to provide information regarding the inmate's mental health history at the time he was transferred to Benton County.[3]

---

[3] Lahr argues that this factual allegation is derived from a complaint in a prior case that was ultimately settled, and that the allegation is irrelevant to the instant case.   Even if certain facts related to the settled case are deemed irrelevant, the Court finds that the suicide of a

(Footnote continued on next page.)

Viewing the facts in a light most favorable to Bechtold, a genuine issue of material fact exists as to whether Lahr had notice that his failure to provide suicide prevention training was deliberately indifferent to Hiltner.

For these reasons, the Court concludes that Lahr is not entitled to qualified immunity on Bechtold's Eighth Amendment claim, and denies Lahr's motion for summary judgment with respect to Count 1 of the Compliant.

### B.    *Monell* Liability

A municipality or local governmental unit may be held liable under § 1983 for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). To establish municipal liability under *Monell*, a plaintiff must prove that a municipal policy or custom "was the moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694. The Eighth Circuit analyzes allegations of inadequate suicide plans as "failure to train" claims, requiring a showing that the failure to train amounts to deliberate indifference to others. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998).

Bechtold asserts two primary arguments in support of her *Monell* claim against Stearns County. First, Bechtold argues that the Suicide Prevention Plan lacks specific

_____

(Footnote continued.)

recently transferred Stearns County inmate in June 2003 is relevant to whether Lahr had notice that the Suicide Prevention Plan was being properly implemented.

source materials and has inadequate provisions for psychiatric referrals. Second, Bechtold argues that Stearns County has failed to ensure annual suicide prevention training, which resulted in deliberate indifference to Hiltner's constitutional rights.

With respect to Bechtold's first argument, the Court finds no support in the record for Bechtold's claim that the lack of source materials resulted in deliberate indifference to Hiltner's constitutional rights. Even if Stearns County's Suicide Prevention Plan has no discernable foundation of specific guidelines, regulations, or psychiatric source materials, Bechtold has not shown that this inadequacy caused Lahr to violate Hiltner's constitutional rights. Indeed, the Court finds that the suicide prevention plan itself, even if it lacks source materials, nonetheless provides specific, enumerated procedures designed to ensure the prevention of inmate suicides. *See Rellergert v. Cape Girardeau County*, 924 F.2d 794, 797 (8th Cir. 1991) (granting immunity to county because the suicide prevention policy represented "affirmative and *deliberate* steps to prevent suicides" and therefore could not be deemed deliberately indifferent). Similarly, Bechtold has failed to establish that the "illusory" psychiatric referral provision was the moving force behind the deprivation of Hiltner's Eighth Amendment right to adequate medical treatment. As discussed above, the alleged absence of psychiatric referrals in this case does not constitute deliberate indifference to Hiltner's constitutional rights. As such, Stearns County cannot be liable for the alleged inadequacies of the psychiatric referral provision. *See Sanders v. City of Minneapolis*, 474 F.3d 523, 527 ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability.").

As to the lack of training, however, the Court finds that Bechtold has established a genuine issue of material fact as to whether Stearns County was the moving force behind Lahr's failure to ensure annual training under the Suicide Prevention Plan.  Because the Plan by its terms requires annual training, the Court finds that Lahr's failure to ensure annual training under the Plan did not result from an unconstitutional Stearns County policy.  *Cf. Liebe*, 157 F.3d at 579 (denying *Monell* claim where suicide prevention plan contained adequate provisions for suicide prevention).  However, viewing the facts in a light most favorable to Bechtold, a genuine issue of material fact exists as to whether Lahr's failure to ensure annual training under the Plan stemmed from a custom of lax enforcement or lack of oversight on the part of Stearns County.  The mere fact that numerous Stearns County Jail officials never received suicide prevention training at all, despite the unequivocal requirement of annual training under the Plan, is material to a determination of whether Stearns County was the moving force behind Hiltner's constitutional deprivation.  In *Liebe*, by contrast, the Eighth Circuit granted summary judgment to the county because the officer on duty, a new employee at the county jail, had received a copy of the jail's suicide prevention policies and was scheduled to receive training.  157 F.3d at 579-80.  Further, the *Liebe* court found it significant that no suicides had ever occurred in the county jail.  *Id.* at 579.  In the instant case, however, the June 2003 suicide of an inmate recently transferred from Stearns County to Benton County creates a fact issue as to whether the alleged custom of non-enforcement was deliberately indifferent to Hiltner's rights.

For these reasons, the Court concludes that Bechtold has established sufficient evidence to create a fact issue for the jury on whether Stearns County should be liable for the violation of Hiltner's constitutional rights. Stearns County's motion for summary judgment with respect to Count 2 of the Complaint is therefore denied.

## III.    BECHTOLD'S NEGLIGENCE CLAIM

Lahr argues that he is immune from Bechtold's state law negligence claim under the doctrine of official immunity. Defendant Stearns County argues in turn that because Lahr is not liable, it cannot be held vicariously liable. *Pletan v. Gaines*, 494 N.W.2d 38, 42 (Minn. 1992). Official immunity applies to a public official who is charged with duties that call for the exercise of his judgment or discretion. *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1976). If "discretionary" conduct is involved, the public official is not liable for resulting damages unless he is guilty of a willful or malicious wrong. *Id.* An act is discretionary if it calls for the exercise of judgment or discretion, i.e., for something more than the performance of merely ministerial duties. *Johnson v. State*, 553 N.W.2d 40, 46 (Minn. 1996).

Bechtold alleges that Lahr's failure to ensure ready access to psychiatric care and his failure to ensure annual training constitute negligence under Minnesota law. With respect to psychiatric care, the Court finds that the conduct required under the suicide prevention plan is discretionary in nature. Under the plan, "The mental health professional will continue to see the inmate as they deem necessary, or will make further referrals as necessary (e.g., psychiatrist)." (Defs.' Mem. Ex. Y.) The plan contains no

non-discretionary duty to ensure that an inmate receives immediate access to psychiatric care.  Rather, the plan calls for the exercise of judgment on the part of a medically trained professional regarding the necessity of an inmate's referral to a psychiatrist.  Bechtold has established no evidence suggesting that Lahr's implementation of the psychiatric referral provision was malicious or in bad faith.  Lahr is thus entitled to official immunity on Bechtold's negligence claim with respect to his alleged failure to ensure ready access to psychiatric care, and Stearns County is similarly entitled to vicarious official immunity on this claim.

However, while Lahr might have some discretion in determining how to implement the annual training requirement, the duty to ensure that annual training actually occurs does not call for the exercise of judgment or discretion.  Under the plan, "[s]taff will receive training on the Suicide Prevention Plan annually."  (Defs.' Mem. Ex. Y.)  As such, the Court finds that Lahr is not entitled to official immunity on Bechtold's claim that the failure to ensure annual training was negligent.  Because Lahr is not entitled to official immunity on this claim, Stearns County may be held vicariously liable so long as Lahr's actions were within the scope of his employment.  *Schroeder v. St. Louis County*, 708 N.W.2d 497, 503 (Minn. 2006) ("[M]unicipalities are generally liable for the torts of their employees if the tort is committed within the scope of employment.").  The Court finds that Lahr's decisions regarding implementation of the Suicide Prevention Plan, including implementation (or lack thereof) of the annual training requirement, are within the scope of his employment.  *See Bartley v. C-H Riding Stables, Inc.*, 206 N.W.2d 660, 662 (Minn. 1973) (holding that the scope of employment extends

to employee activities that are generally in furtherance of the employer's business). For these reasons, the Court concludes that Stearns County defendants are not entitled to official immunity or vicarious official immunity with respect to Bechtold's claim that Lahr's failure to ensure annual training was negligent. The Court denies Stearns County defendants' motion for summary judgment with respect to Count 3 of the Complaint. Although this case presents a close call, the Court finds, consistent with this opinion, that plaintiff has alleged sufficient facts to present this case to a jury.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Stearns County defendants' motion for summary judgment [Docket No. 39] is **DENIED**.


DATED:     September 28, 2007                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                   United States District Judge